UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM NEWMAN, and NEWMAN
FOREST PRODUCTS, LLC.,

    Plaintiffs,

v.                                                Case No. 2:08-cv-185
                                                HON. R. ALLAN EDGAR

ROLAND MACHINERY COMPANY,
an Illinois Corporation

    Defendant.
_____/

**MEMORANDUM**

Plaintiffs William Newman and Newman Forest Products LLC brought suit in Delta County Circuit Court in the State of Michigan for breach of contract, fraud in the inducement, innocent and willful misrepresentation, and unconscionable contract under Michigan law. [Court Doc. No. 1-2, Complaint; Court Doc. No. 41, First Amended Complaint]. Defendant Roland Machinery Company ("Roland Machinery"), an Illinois corporation, removed the case to this court on the basis of the complete diversity of the parties pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. [Court Doc. No. 1, Notice of Removal].

Defendant Roland Machinery now moves for partial summary judgment dismissal of Plaintiffs' tort claims of fraud in the inducement and innocent and willful misrepresentation. [Court Doc. No. 48]. Plaintiffs oppose the motion. [Court Doc. No. 56]. The court has reviewed the arguments of the parties, the evidence in the record, and the applicable law and has determined that Defendant's motion will be **GRANTED**.

I.      **Background**

Plaintiff William Newman alleges that on January 12, 2007 he visited Roland Machinery in Escanaba, Michigan and spoke with a sales representative, Matt Hanson, regarding the purchase of a wood processor.  *See* First Amended Complaint, ¶ 1.  Mr. Newman asserts that Mr. Hanson showed him a 1999 Timbco Rolly II Processing Head.  The Amended Complaint asserts:

>   Plaintiff examined the Timbco and saw that it had a fresh oil change and then when the machine was turned on Plaintiff noticed oil leaks on the bottom of the engine and on the back of the machine, causing Plaintiff serious concern about the condition of the machine.
>
>   Plaintiff and his brother went into the office of David Green, of Roland, to discuss the fact that the machinery appeared to have some problems.  Mr. Green assured Plaintiff that all oil leaks would be fixed, if Plaintiff bought the machine, and assured Plaintiff that the engine was in "perfect condition".  He also made the further promise that his mechanics would give the machine a thorough, after purchase, going through, and make sure that all mechanical aspects were in sound operational condition and any and all necessary repairs would be made.  All of the statements having been said to induce William Newman to purchase the machine.
>
>   At that point Mr. Green produced a previously prepared sales order form and had Plaintiff sign the front of the form so that Roland wouldn't sell the machine before Plaintiff could secure financing.  Based on that representation Plaintiff signed the sales order form with the understanding that it was to hold the machine only, and was contingent on Plaintiff obtaining financing.  Plaintiff also believed that a complete contract would be produced and executed if the sale ultimately went thru [sic]. . . .
>
>   Plaintiff did not realize that the sales order had writing on the side facing the table top since it was presented face up and had the signature line on the side facing up.  The Sales Order Form did have written on it "Subject to repairs being completed."
>
>   The reference on the front page of the order form, to wit: "Subject to repairs being completed."  Meant [sic] that those repairs and promises referred to in paragraph 4 above would be performed and completed by Defendant, immediately and forthwith, if the sale went through.

First Amended Complaint, ¶¶ 3-7.

Plaintiffs apparently obtained financing for the processor and agreed to pay the purchase price of $160,000. Mr. Newman alleges that when the Defendant delivered the wood processor to his place of business, the delivery driver could not even start the machine long enough to drive it off the trailer until after an hour of effort. *Id.* at ¶ 8. While the delivery driver was attempting to start the wood processor, Plaintiff alleges Mr. Green drove up and asked for payment for the wood processor. Plaintiff asserted that the machine was not "as promised" and Mr. Green indicated that Roland Machinery would fix it because it was only a minor problem. *Id.* at ¶ 9. Following Mr. Green's promise, Plaintiff agreed to release payment for the processor to Roland Machinery.

The delivery driver finally got the processor to start long enough to drive it off the trailer, but Plaintiffs allege that the processor then failed again, and the delivery man was unable to restart the machine that day. The next day, January 26, 2007, the delivery man met Mr. Newman and was able to start the machine. First Amended Complaint ¶ 12. Plaintiffs assert that it worked for about two hours, but started leaking oil. *Id.* On January 27, 2007 Mr. Newman again attempted to start the processor, but it would not start. Mr. Newman called Mr. Hanson at Roland Machinery, and Mr. Hanson indicated the solenoid starter was bad and that Defendant would send a mechanic to Plaintiffs' place of business. *Id.* at ¶ 14.

On February 5th, a mechanic from Roland Machinery attempted to fix the solenoid starter and the oil leaks, but Plaintiffs assert that he was unable to do so. On February 22, 2007 another individual from Roland Machinery attempted to fix the oil leaks, but could not do so. *Id.* at ¶¶ 15-16.

On March 2, 2007 Mr. Newman called Mr. Hanson to inform him that the processor was

using three to four quarts of oil daily because of leakage issues.  First Amended Complaint, ¶ 18.  On March 3, 2007 Mr. Newman contacted the owner of Roland Machinery in his Illinois office and explained that "the machine didn't meet the promises made by the sales persons, and it was an expensive lemon, and the promised repairs were obviously not made." *Id.* at ¶ 18.  Plaintiff alleges that Mr. Roland "threaten[ed] to shut Plaintiff down but he did say that he would send a mechanic down to see if there was a valve problem." *Id.*  Plaintiff complains that "[b]y 5/17/07 oil was leaking into the antifreeze, the engine was losing power, the rear seal had an oil leak and the computer wasn't working.  The call to Matt Hanson elicited the following response.  'I'm not helping you.  You bought a used machine'. " *Id.* at ¶ 21.

The Sales Order Form [Court Doc. No. 48-4] indicates that the "1999 Timbco with Rolly II Processing Head" was being purchased for a price of $160,000 "subject to repairs being completed including all lights working, fire suppression, & A/C working.  Replace bad hoses, replace pins & bushings on roller arms, repack main liftage."  Below the handwritten description of repairs the order form states in small type:

> Used Equipment Sold "AS IS" Unless Specifically Warranted Under Paragraph 7 on the Reverse Side of this contract.
>
> NO WARRANTIES OF ANY KIND, WHETHER EXPRESSED OR IMPLIED (INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, LOSS OF INCOME OF CONSEQUENTIAL DAMAGES) ARE OR HAVE BEEN MADE BY THE DEALER WITH RESPECT TO ANY MACHINERY DESCRIBED HEREIN, WHICH ARE NOT SPECIFICALLY SET FORTH IN THIS DOCUMENT OR DESCRIBED IN PARAGRAPH 8 OF THE REVERSE SIDE.

Sales Order Form.  On the reverse side of the form, Paragraph 7 of the Terms and Conditions states:

> 7. Any USED or SECOND HAND equipment included in this order is sold WITHOUT ANY WARRANTY whatsoever, EXPRESS or IMPLIED (except that the seller warrants title); unless said warranty is set forth in full in the space next following and is initialed by both of the parties hereto.

*Id.* The spaces below Paragraph 7 are blank. Mr. Newman did not sign the signature line below the words: "BUYER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE PURCHASE ORDER." *Id.*

Plaintiffs assert that the repairs Defendant promised were never made and the ones that were completed did not work or did not last. Plaintiffs claim that not only have they lost a functioning wood processor, they assert that they have suffered consequential damages of a lost wood processing contract with Weyerhaeuser Corporation and that Mr. Newman has lost his home due to foreclosure. First Amended Complaint, ¶¶ 52-56.

Roland Machinery asserts that Plaintiffs' claims are governed by the Uniform Commercial Code ("U.C.C.") as adopted by Michigan law, Mich. Comp. Laws §§ 440.1101 et seq., and that their tort claims are foreclosed. Defendant asserts that Plaintiffs' contract claims will be governed by the language of the Sales Order Form agreement signed by the parties.

**II.    Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway*

*Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d

376, 378 (6th Cir. 1993).

> **III.    Analysis**

Defendant claims that Plaintiffs' tort claims of fraud in the inducement and willful and innocent misrepresentation must be dismissed based on the "economic loss doctrine" under Michigan law. In *Neibarger v. Universal Cooperatives, Inc.*, the Michigan Supreme Court addressed the "economic loss doctrine" under Michigan law. 486 N.W.2d 612 (Mich. Sup. Ct. 1992). As the Michigan Supreme Court explained in *Neibarger*,

> Michigan adopted the Uniform Commercial Code with the passage of 1962 P.A. 174, effective January 1, 1964. . . . Article 2 of the code governs the relationship between the parties involved in "transactions in goods." Under Article 2, a sale of goods is accompanied by the implied warranties of merchantability and fitness and an express warranty may be created by negotiation or by the conduct of the seller. Thus, under the code, the purchaser of defective goods may recover the benefit of the bargain (the difference between the value of the goods as delivered and the value the goods would have had they complied with the warranty) as well as incidental and consequential damages in a proper case. . . .
> The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' "

486 N.W.2d at 614-615.

After reviewing the evolution of the "economic loss doctrine" in other states, the Michigan Supreme Court held:

> [w]e are convinced that the reasoning of those courts which have adopted the economic loss doctrine compels a similar conclusion on our part. In the absence of legislative direction, we believe such a rule is required to guide trial courts facing cases such as those before us which lie at the intersection of tort and contract. Accordingly, we hold that where a plaintiff seeks to recover for economic loss caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC, including its statute of limitations. A contrary holding would not only serve to blur the distinction between tort and contract, but would undermine the purpose of the Legislature in adopting the

> UCC.  The code represents a carefully considered approach to governing "the economic relations between suppliers and consumers of goods."
>
> If a commercial purchaser were allowed to sue in tort to recover economic loss, the UCC provisions designed to govern such disputes, which allow limitation or elimination of warranties and consequential damages, require notice to the seller, and limit the time in which such a suit must be filed, could be entirely avoided.  In that event, Article 2 would be rendered meaningless, and as stated by the Supreme Court in *East River* . . . "contract law would drown in a sea of tort."

*Id.* at 618 (quoting *East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2300 (1986)).  In *Neibarger* the plaintiffs in two separate cases claimed that they had sustained damages due to the installation of defective milking systems on their dairy farms.  486 N.W.2d at 613-614.  Both plaintiffs alleged that the milking systems led to decreased milk production and to sickness, and in some cases, death within their herds.  *Id.*  The plaintiffs brought claims for breach of warranty and for negligence.  The Michigan Supreme Court held that the plaintiffs' claims were limited by the "economic loss doctrine" and thus were governed by the UCC and time-barred.

In *Huron Tool and Engineering Co. v. Precision Consulting Servs., Inc.*, a Michigan appeals court explained a very limited exception to the "economic loss doctrine."  532 N.W.2d 541 (Mich. Ct. App. 1995).  The exception to the doctrine is only for fraud in the inducement claims:

> we decline to adopt defendants' position that the economic loss doctrine precludes *any* fraud claim.  Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior.  In contrast, where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Id.* at 545 (citing *Public Serv. Enterprise Group, Inc. v. Philadelphia Elec. Co.*, 722 F.Supp. 184, 201 (D.N.J. 1989)). The court of appeals then held that a "plaintiff may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract." *Huron Tool*, 532 N.W.2d at 546. The appellate court also noted that "[o]ur holding heeds the Supreme Court's admonition to avoid confusing contract and tort law. . . . However, a claim of fraud in the inducement, by definition, redresses misrepresentations that induce the buyer to enter into a contract but that do not in themselves constitute contract or warranty terms subsequently breached by the seller." *Id.* The court ultimately held that the plaintiff did not state a claim of fraud in the inducement where the alleged fraudulent representations "concern[ed] the quality and characteristics of the software system sold by defendants." *Id.* at 546 (citing *Niebarger*, 486 N.W.2d at 618-19).

In *Samuel D. Begola Servs., Inc. v. Wild Brothers*, another Michigan appellate court defined fraud in the inducement as occurring "where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. . . . Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." 534 N.W.2d 217, 219 (Mich. Ct. App. 1995). In that case the Michigan court found fraud in the inducement existed where the plaintiffs entered into a contract with defendant to purchase land, but had no intention of abiding by the terms of the land purchase agreement, which restricted how many trees on the property could be harvested

for timber. *Id.* at 219-220. The court explained:

> In the present case, the trial court made detailed findings of fact on the record and concluded that plaintiff had perpetrated a fraud in inducing defendants to enter into the purchase agreements where plaintiff had no intention of abiding by their terms. The evidence clearly supports such a finding, and the evidence suggesting otherwise is minimal. Therefore, defendants were entitled to rescind the agreements and effected a rescission by refusing to proceed to closing.

*Id.* at 220.

> Michigan courts have defined the elements of a claim of fraud in the inducement:
>
> a party must show that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage."

*Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409 (Mich. Ct. App. 2007) (quoting *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (Mich. Ct. App. 2003)). In *Valleyside Dairy Farms, Inc. v. A.O. Smith Corp.* a district court addressed whether the plaintiffs' claims regarding alleged misrepresentations relating to the airtight nature of silos they had purchased from defendants amounted to fraud in the inducement and fit the *Huron Tool* exception. 944 F.Supp. 612, 614 (W.D. Mich. 1995). The plaintiffs argued that the defendants intentionally misrepresented the features of their grain silos and that the plaintiffs reasonably relied on those misrepresentations. *Id.* at 616-617. The court concluded that the plaintiffs' tort claims were not an exception to the "economic loss doctrine":

> The Court is not persuaded by such arguments. In this case, plaintiffs' fraud claims are within the economic loss doctrine. Plaintiffs' fraud claims arise in the commercial context of a dairy farm in which economic interests are central. Although plaintiffs claim non-economic loss for humiliation, outrage, indignity, emotional distress and mental anguish, plaintiffs' alleged injuries do not appear to

> involve accidental or personal injury.
>
> Moreover, plaintiffs' claim does not come within the *Huron Tool* exception for fraud in the inducement. The allegedly fraudulent representations that induced the plaintiffs to use Harvestore silos "concern the quality and characteristics" of the Harvestore silos as being air-tight and, therefore, more beneficial in preserving ensiled feed. The Harvestore silos allegedly frustrated plaintiffs' economic expectations because they were not air-tight. If the Harvestore silos had performed as represented, there would be no alleged aerobic degradation of the ensiled feed and no injury in the form of lower profits and higher operating costs for the dairy operation. Plaintiffs' fraud claims are inextricably connected to the "quality or character" of the silos about which plaintiffs could have negotiated a warranty and other terms to account for possible defects in the goods or nonperformance. Clearly, the defendants [sic] representations were not extraneous to the quality and characteristics of the silos. Further, plaintiffs' allegations are essentially indistinguishable from a contract claim that they could have brought against their seller, had they negotiated a warranty of quality and performance. Accordingly, the economic loss doctrine applies and bars plaintiffs' fraud claims.

944 F.Supp. at 617. *See also, Martin v. A.O. Smith Corp.*, 931 F.Supp. 543, 546-47 (W.D. Mich. 1996) (dismissing plaintiff's fraud claims because the alleged misrepresentations relate to the "quality or character of the Harvestore silos and could freely have been made part of the parties' contract negotiations"); *Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955, 961 (W.D. Mich. 1994) (dismissing plaintiff's claims of fraud and misrepresentation arising because the boat plaintiff purchased from defendant did not work as it was supposed to work and thus did not arise independently of the parties' contract).

> As these cases demonstrate, courts interpreting Michigan law distinguish:
>
> between fraudulent behavior that induces one party to enter into a contract and a dishonest party's misrepresentations regarding the quality or character of the goods that are the subject of the contract, observing that the former situation constitutes an exception to the economic loss doctrine whereas the latter does not.

*General Motors Corp. v. Acme Refining Co.*, 513 F.Supp.2d 906, 912 (E.D. Mich. 2007)

(dismissing defendant's tort counterclaims because they related to the quality and character of the scrap materials plaintiff sold to defendant). These courts look for "operative allegations in the claims [that] would not arise without the existence of the putative contracts between the parties. Such allegations therefore cannot be maintained as tort-based claims." *Merchants Publishing Co. v. Maruka Machinery Corp. of America*, 800 F.Supp. 1490, 1492 (W.D. Mich. 1992); *see also, Bailey v. Nor-Am Chem. Co.*, 27 F.3d 188, 191-92 (6th Cir. 1994). "Thus, the key inquiry is whether the misrepresentation is 'but another thread of fabric' in the contract claim or an 'extraneous' misrepresentation that actually induced the party to execute the contract." *Huber v. Crop Production Servs., Inc.*, No. 06-14564-BC, 2007 WL 2746625, *6 (E.D. Mich. Sept. 19, 2007).

In *Huber* the district court determined that the defendant's alleged misrepresentations about the amount of nutrients in its fertilizer did not constitute fraud that was exempt from the economic loss doctrine. *Id.* at *6. However, the court concluded, "the allegations that [defendant's] representatives made individualized representations after conducting soil analyses and other services that induced [plaintiff] to enter into a contract seem to fall squarely into the exception outlined in *Huron Tool*." *Id.* The court found that those recommendations that induced the plaintiff into contracting were not barred by the economic loss doctrine. *Id.*

In *Groeb Farms, Inc. v. Alfred L. Wolff, Inc.*, the district court addressed plaintiff's claims relating to alleged breaches of contracts for the sale and delivery of honey. No. 08-CV14624, 2009 WL 500816 (E.D. Mich. Feb. 27, 2009). The court determined that although the plaintiff stated a claim of fraud in the inducement, the claim was not pled with the "requisite particularity under the Federal Rules of Civil Procedure." *Id.* at *6. The court noted:

> The allegations in support of Plaintiff's fraud claim may fairly be read as supporting a claim of fraud in the inducement. On the one hand, Defendant's alleged representation that it would deliver a certain quality and country of origin is merely a promise of future action and therefore cannot support a fraud claim. But, on the other hand, Defendant's alleged representation that it could deliver honey of a certain country of origin is not a promise of future action and instead can be construed as a representation of present or past facts – i.e., that Defendant is then capable of obtaining Indian and Korean honey for delivery. Hence, Defendant's alleged misrepresentations do not merely "concern the quality and characteristics of" the honey to be supplied by it, but rather have the independent harm of potentially inducing Plaintiff to enter into a contract with a party that knowingly and intentionally made a promise it could not keep."

*Id.* at *5. However, the court dismissed plaintiff's misrepresentation claims because he failed to allege "specific facts regarding when that representation was made; by whom it was made; or where it was made." *Id.*

In a very recent opinion from the Michigan Supreme Court, the Court suggests that the fraud in the inducement exception to the economic loss doctrine is very narrow. *General Motors Corp. v. Alumi-Bunk, Inc.*, 757 N.W.2d 859 (Mich. Sup. Ct. 2008). In that case the Michigan Supreme Court reversed a court of appeals decision and held that the trial court was correct in finding that the plaintiff had not stated a claim for fraudulent inducement. *Id.* It affirmed the trial court's decision without comment "for the reasons stated in the Court of Appeals dissenting opinion." *Id.* Justice Young, in a concurring opinion, elaborated on the Court's cursory decision:

> The alleged basis for the contract was defendant's promise to "upfit" (modify) the vehicles it purchased from plaintiff in exchange for a discounted price. Contrary to Justice Kelly's analysis, this singular "promise" is the *sole* reason for the dispute between the parties. Indeed, a reader will be hard-pressed to find a distinction between the two complaint averments that Justice Kelly quotes in support of her dissenting statement.
>
> Plaintiff claims that defendant made this upfit promise during the negotiation

> phase, but it was never made a part of the contract. Nevertheless, plaintiff contends that defendant breached its promise to upfit the vehicles it purchased and that defendant never intended to upfit when it promised to do so. Thus, the promise to upfit is both the basis for the breach of contract claim and the fraudulent inducement claim.
>
> . . . Moreover, there is no way to characterize these identical allegations as separate claims for breach of contract and fraudulent inducement. Accordingly, the trial court was required, as it did, to dismiss the fraud claim to prevent contract law from "drown[ing] in a sea of tort."

*Id.* at 859-60 (quoting *Neibarger*, 486 N.W.2d at 618). The dissenting opinion in the court of appeals, on which the Supreme Court relied, noted that "[t]he alleged misrepresentations that form the basis of GM's fraud claim are precisely the same as those alleged in its breach of contract claim." *General Motors Corp. v. Alumi-Bunk, Inc.*, No. 04-422587-CB, 2007 WL 2118796, *10 (Mich. Ct. App. July 24, 2007) (Kelly, J., dissenting).

In this case it appears clear that Plaintiffs' claims of innocent and willful misrepresentation are clearly barred by the economic loss doctrine as described in *Niebarger*, 586 N.W.2d 612. These claims do not fit within any identified exception to the economic loss doctrine. Thus, this court will **GRANT** Defendant's motion for partial summary judgment on Plaintiffs' claims of innocent and willful misrepresentation.

It is a closer question whether Plaintiffs' claim of fraudulent inducement is barred by the economic loss doctrine. Plaintiffs claim two different types of alleged fraud. Mr. Newman asserts that he did not understand that the "Sales Order Form" was a binding contract; instead, he believed that he was only signing the document in order to "hold" the wood processor while he obtained financing. In addition, Plaintiffs claim that Defendant's representatives promised to repair the wood processor to make sure that it operated properly and that these promises induced

the Plaintiffs to purchase the machine.

Michigan law regarding the exception to the economic loss doctrine for fraudulent inducement is rather nuanced, and at times, opaque. For instance, some Michigan courts have noted that future promises are not excluded by the fraudulent inducement exception, while other jurists insist that a claim for fraudulent inducement cannot be based on a promise of future action. *Compare Samuel D. Begola Servs.*, 534 N.W.2d at 219 with *General Motors Corp. v. Alumi-Bunk, Inc.*, 2007 WL 2118796, at *11 (Kelly, J., dissenting).

Mr. Newman complains that he did not understand that the "Sales Order Form" he signed was a contract; however, this claim is better understood as relating to the breach of contract claim rather than as a separate fraud claim. Similarly, although the court understands that Plaintiffs are arguing that Defendant's promise to repair the machine induced them to purchase it, this claim is inextricably intertwined with the breach of contract alleged. The top of the "Sales Order Form" indicates that the purchase of the wood processor is "subject to repairs being completed including all lights working, fire suppression & A/C working. Replace bad hoses, replace pins & bushings on roller arms, repack main liftage." [Court Doc. No. 48-4]. This language is subject to the disclaimers of warranties also woven into the written contract of the "Sales Order Form." Thus, the alleged promises to undertake repairs are a part of the contract themselves, and as such, can be analyzed within the context of Plaintiffs' breach of contract claims. The failure to make repairs as promised is the basis for both the fraud claim and the breach of contract claim. *Alumi-Bunk, Inc.*, 757 N.W.2d at 860. The court concludes that the very recent Michigan Supreme Court decision in *Alumi-Bunk* compels this conclusion and that the fraud claim cannot be disentangled from the breach of contract claim. The Michigan Supreme Court has signaled that

it views the *Huron* exception to be very limited and will not apply where the fraud claim is intertwined with the contract claim. For these reasons, the court concludes that Plaintiffs' fraud in the inducement claim must be **DISMISSED**.

**IV. Conclusion**

As discussed *supra*, the court concludes that the economic loss doctrine precludes Plaintiffs' tort claims of fraud in the inducement and innocent and willful misrepresentation. For this reason, the court will **GRANT** Defendant's motion for partial summary judgment.

A separate order will enter.


Dated: 5/19/09                     */s/ R. Allan Edgar*
                                    R. ALLAN EDGAR
                                    UNITED STATES DISTRICT JUDGE