UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM NEWMAN, and NEWMAN
FOREST PRODUCTS, LLC.,

     Plaintiffs,

v.                                    Case No. 2:08-cv-185
                                          HON. R. ALLAN EDGAR

ROLAND MACHINERY COMPANY,
an Illinois Corporation

     Defendant.

_____/

## MEMORANDUM

Plaintiffs William Newman and Newman Forest Products LLC brought suit in Delta County Circuit Court in the State of Michigan for breach of contract, fraud in the inducement, innocent and willful misrepresentation, and unconscionable contract under Michigan law. [Court Doc. No. 1-2, Complaint; Court Doc. No. 41, First Amended Complaint]. Defendant Roland Machinery Company ("Roland Machinery"), an Illinois corporation, removed the case to this court on the basis of the complete diversity of the parties pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441. [Court Doc. No. 1, Notice of Removal].

Defendant Roland Machinery moved for partial summary judgment dismissal of Plaintiffs' tort claims of fraud in the inducement and innocent and willful misrepresentation. [Court Doc. No. 48]. This court previously granted Defendant's motion for partial summary judgment. [Court Doc. No. 60]. Defendant now moves for summary judgment dismissal of the remaining claims for breach of contract and unconscionability. [Court Doc. No. 72]. Plaintiffs oppose the motion. [Court Doc. No. 74]. The court has reviewed the arguments of the parties,

the evidence in the record, and the applicable law and has determined that Defendant's motion

will be **DENIED in part** and **GRANTED** in part.

I.      **Background**

The court has previously outlined many of the background facts in this matter in its prior

memorandum pertaining to this action. *See* [Court Doc. No. 61]. Plaintiff William Newman

alleges that on January 12, 2007 he visited Roland Machinery in Escanaba, Michigan and spoke

with a sales representative, Matt Hanson, regarding the purchase of a wood processor. *See* First

Amended Complaint, ¶ 1. Mr. Newman asserts that Mr. Hanson showed him a 1999 Timbco

Rolly II Processing Head. The Amended Complaint asserts:

> Plaintiff examined the Timbco and saw that it had a fresh oil change and
> then when the machine was turned on Plaintiff noticed oil leaks on the bottom of
> the engine and on the back of the machine, causing Plaintiff serious concern about
> the condition of the machine.

> Plaintiff and his brother went into the office of David Green, of Roland, to
> discuss the fact that the machinery appeared to have some problems. Mr. Green
> assured Plaintiff that all oil leaks would be fixed, if Plaintiff bought the machine,
> and assured Plaintiff that the engine was in "perfect condition". He also made the
> further promise that his mechanics would give the machine a thorough, after
> purchase, going through, and make sure that all mechanical aspects were in sound
> operational condition and any and all necessary repairs would be made. All of the
> statements having been said to induce William Newman to purchase the machine.

> At that point Mr. Green produced a previously prepared sales order form
> and had Plaintiff sign the front of the form so that Roland wouldn't sell the
> machine before Plaintiff could secure financing. Based on that representation
> Plaintiff signed the sales order form with the understanding that it was to hold the
> machine only, and was contingent on Plaintiff obtaining financing. Plaintiff also
> believed that a complete contract would be produced and executed if the sale
> ultimately went thru [sic]. . . .

> Plaintiff did not realize that the sales order had writing on the side facing
> the table top since it was presented face up and had the signature line on the side
> facing up. The Sales Order Form did have written on it "Subject to repairs being

completed."

The reference on the front page of the order form, to wit: "Subject to repairs being completed." Meant [sic] that those repairs and promises referred to in paragraph 4 above would be performed and completed by Defendant, immediately and forthwith, if the sale went through.

First Amended Complaint, ¶¶ 3-7.

During his deposition Plaintiff testified that when he inspected the processor he noticed that:

[i]t wasn't taken care of. It needed a lot of maintenance; maintenance was terrible on it. There was no grease. Nothing that should have been done to it was done to it. The bar – the bar was bent. The welds were all weak. The cylinders were leaking, all the hydraulic hoses; there was numerous [sic] of them were just full of leaks. And the computer, from what we could tell, was old and it wasn't – we didn't know until – at that time until they turned it. It didn't look like it was – and the wires were hanging out of it, the head; just all that.

[Court Doc. Nos. 75-2, 81, Deposition of William Ralph Newman ("Newman Dep."), pp. 92-93].

He believed it "would be a good machine if they fixed what was supposed to be, that we could tell was wrong with it." *Id.* at 93. He further asserts that he informed Mr. Hanson that he "needed to cut a load a day and they told [him] that this machine would do it with no problem." *Id.* at 102. Plaintiff walked around the processor with his brother indicating issues on the machine that needed to be addressed and fixed while a mechanic was present. *Id.* at 106-07. Plaintiff further understood that the machine was used and was probably eight to ten years old. *Id.* at 108. Plaintiff agreed that there were numerous small issues, such as torn upholstery, lights that would not work and a radio that did not function well, but he thought "they'd just got it on trade and they were supposed to fix it before they resell it anyway." *Id.* at 109-110. Plaintiff's version of events indicates that he discussed Defendant undertaking a series of extensive repairs

to the processor, including fixing leaking cylinders, repairing roller arms, checking the engine, and eliminating unusual smoke problems. *Id.* at 111. Mr. Newman asserts that Mr. David Green asked him what he thought and they discussed all the repairs Mr. Newman expected to be completed. *Id.* at 114-116. *See also*, [Court Doc. No. 76, Affidavit of William Newman ("Newman Aff."), ¶ 13].

Plaintiffs apparently obtained financing for the processor and agreed to pay the purchase price of $160,000. The Sales Order Form [Court Doc. No. 48-4 ("Sales Order Form")] indicates that the "1999 Timbco with Rolly II Processing Head" was being purchased for a price of $160,000 "subject to repairs being completed including all lights working, fire suppression, & A/C working. Replace bad hoses, replace pins & bushings on roller arms, repack main lift ___." It is unclear what the final handwritten word states, with the parties disputing whether it states "etc." or "cyc." Newman Dep., pp. 116, 174; Newman Aff*.,* ¶¶ 17-19; [Court Doc. No. 81, Affidavit of Matt Hanson ("Hanson Aff."), ¶ 5]. Plaintiffs assert that the handwritten list of repairs concludes with "etc." because the list was

> just a small portion of it. That's why he put the "et cetera" on there because it – it was – every – all the engine was supposed to be gone through, the engine – nothing was done what he said, other than the stuff he could – had lines to fill in and that; therefore, he put the "et cetera" on the back because that was my main – my main point was I wanted that engine gone through. I'm not going to take an engine when it's burning oil; it's obvious.

Newman Dep., p. 117.

Below the handwritten description of repairs the Sales Order Form states in small type:

Used Equipment Sold "AS IS" Unless Specifically Warranted Under Paragraph 7 on the Reverse Side of this contract.

NO WARRANTIES OF ANY KIND, WHETHER EXPRESSED OR IMPLIED

(INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, LOSS OF INCOME OF CONSEQUENTIAL DAMAGES) ARE OR HAVE BEEN MADE BY THE DEALER WITH RESPECT TO ANY MACHINERY DESCRIBED HEREIN, WHICH ARE NOT SPECIFICALLY SET FORTH IN THIS DOCUMENT OR DESCRIBED IN PARAGRAPH 8 OF THE REVERSE SIDE.

Sales Order Form.  On the reverse side of the form, Paragraphs 7 through 9 of the Terms and

Conditions state in fine print:

7. Any USED or SECOND HAND equipment included in this order is sold WITHOUT ANY WARRANTY whatsoever, EXPRESS or IMPLIED (except that the seller warrants title); unless said warranty is set forth in full in the space next following and is initialed by both of the parties hereto.

8. The warranty of the Seller insofar as all new products, machines, engines, attachments, and parts are concerned, shall be the same as and limited to the MANUFACTURER'S WARRANTY thereof, if any, which the Buyer accepts IN EXCLUSION of any and all other WARRANTIES, EXPRESS OR IMPLIED, such as but not limited to WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE or of MERCHANTABILITY or otherwise.  Seller, not being the manufacturer of the machinery, nor the manufacturer's agent, makes no warranty against patent or latent defects in materials, workmanship or capacity of the equipment, not warranty that the equipment will satisfy the requirements of any law, rule, specification or contract.

9. The Seller shall not be liable to nor responsible for any damage to property or person of Buyer, or for any loss, cost, expense, penalty, delay howsoever suffered, or sustained by Buyer occasioned by the use, operation, possession or handling of the equipment purchased, nor for any other damage, loss, cost, expense, penalty or delay of Buyer resulting from the failure of said machine to operate.

*Id.*  The spaces below Paragraph 7 are blank.  Mr. Newman did not sign the signature line below

the words: "BUYER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE PURCHASE

ORDER."  *Id.*

Mr. Newman alleges that when the Defendant delivered the wood processor to his place

of business, the delivery driver could not start the machine long enough to drive it off the trailer

until after an hour of effort.  First Amended Complaint, ¶ 8.  While the delivery driver was attempting to start the wood processor, Plaintiffs allege Mr. Green drove up and asked for payment for the wood processor.  Mr. Newman asserted that the machine was not "as promised" and Mr. Green indicated that Roland Machinery would fix it because it was only a minor problem.  *Id.* at ¶ 9.  Following Mr. Green's promise, Plaintiffs agreed to release payment for the processor to Roland Machinery.

The delivery driver finally got the processor to start long enough to drive it off the trailer, but Plaintiffs allege that the processor then failed again, and the delivery man was unable to restart the machine that day.  The next day, January 26, 2007, the delivery man met Mr. Newman and was able to start the machine.  First Amended Complaint ¶ 12.  Plaintiffs assert that it worked for about two hours, but started leaking oil.  *Id.*  On January 27, 2007 Mr. Newman again attempted to start the processor, but it would not start.  Mr. Newman called Mr. Hanson at Roland Machinery, and Mr. Hanson indicated the solenoid starter was bad and that Defendant would send a mechanic to Plaintiffs' place of business.  *Id.* at ¶ 14.

On February 5th, a mechanic from Roland Machinery attempted to fix the solenoid starter and the oil leaks, but Plaintiffs assert that he was unable to do so.  On February 22, 2007 another individual from Roland Machinery attempted to fix the oil leaks, but could not do so.  *Id.* at ¶¶ 15-16.

On March 2, 2007 Mr. Newman called Mr. Hanson to inform him that the processor was using three to four quarts of oil daily because of leakage issues.  First Amended Complaint, ¶ 18.  On March 3, 2007 Mr. Newman contacted the owner of Roland Machinery in his Illinois office and explained that "the machine didn't meet the promises made by the sales persons, and it was

an expensive lemon, and the promised repairs were obviously not made." *Id.* at ¶ 18.  Plaintiffs allege that Mr. Roland "threaten[ed] to shut Plaintiff down but he did say that he would send a mechanic down to see if there was a valve problem." *Id.*  Plaintiffs complain that "[b]y 5/17/07 oil was leaking into the antifreeze, the engine was losing power, the rear seal had an oil leak and the computer wasn't working.  The call to Matt Hanson elicited the following response.  'I'm not helping you.  You bought a used machine'. " *Id.* at ¶ 21.  The record demonstrates that the processing head was repossessed on June 13, 2007.  [Court Doc. No. 72-3, p. 5].  Mr. Newman admitted in his deposition that he never made a monthly payment towards the loan on the processor.  Newman Dep., p. 203.

Plaintiffs assert that the repairs Defendant promised were never made and the ones that were completed did not work or did not last.  The record indicates that Mr. Newman used the machine for 600 hours, but much of that time was spent on attempting to make the machine work.  [Court Doc. No. 72-3].  Plaintiffs claim that not only have they lost a functioning wood processor, they assert that they have suffered consequential damages of a lost wood processing contract with Weyerhaeuser Corporation and that Mr. Newman has lost his home due to foreclosure.  First Amended Complaint, ¶¶ 52-56.

Roland Machinery asserts that Plaintiffs' claims are governed by the Uniform Commercial Code ("U.C.C.") as adopted by Michigan law, Mich. Comp. Laws §§ 440.1101 *et seq.,* and that their remaining claims are foreclosed.  Defendant asserts that Plaintiffs' contract claims will be governed by the language of the Sales Order Form agreement signed by the parties.

## II.      Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.  The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435.  The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof.  *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III. Analysis

### A. Breach of Contract

Plaintiffs assert that Defendant Roland Machinery breached its contract with them by not performing complete repairs upon the used processor as contemplated by the parties. Michigan has adopted the U.C.C., and Mich. Comp. Laws § 440.2316 states:

> (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> (3) Notwithstanding subsection (2):
> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; . . .

Mich. Comp. Laws § 440.2316(1)-(3).

In *Rory v. Continental Ins. Co.* the Michigan Supreme Court outlined some basic principles regarding contract interpretation under Michigan law:

> A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*. Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract. This Court has previously noted that "'[t]he general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.'"

703 N.W.2d 23, 30 (Mich. Sup. Ct. 2005) (quoting *Terrien v. Zwit*, 648 N.W.2d 602, 611 (Mich. Sup. Ct. 2002) and *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356 (1931)) (other citations omitted). The court in *Rory* further explained that, with respect to contracts of adhesion, or form contracts that are non-negotiable, "an adhesion contract is simply a type of contract *and* is to be enforced according to its plain terms just as any other contract. . . . Regardless of whether a contract is adhesive, a court may not revise or void the unambiguous language of the agreement to achieve a result that it views as fairer or more reasonable." 703 N.W.2d at 488-89.

Michigan has also adopted the parol evidence rule of the U.C.C.:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Mich. Comp. Laws § 440.2202. Michigan courts have summarized the parol evidence rule as

follows: "'parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.'" *Blackburne & Brown Mortgage Co. v. Ziomek*, 692 N.W.2d 388, 396 (Mich. Ct. App. 2005) (quoting *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) and *Schmude Oil Co. v. Omar Operating Co.*, 458 N.W.2d 659, 663 (Mich. Ct. App. 1990)); *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 315 (6th Cir. 1998) (noting that "in Michigan, where the contract is clear and unambiguous on its face, the parol evidence rule operates to preclude the introduction of evidence *dehors* the contract that would vary or contradict the contract's unambiguous terms").

However, under Michigan law parol evidence may be used to explain the meaning of a contract where its terms are ambiguous. In *Klapp v. United Ins. Group Agency, Inc.* the Michigan Supreme Court explained:

> Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule. "The parol evidence rule does not preclude the admission of parol or extrinsic evidence for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement. Such evidence is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is. Thus a written instrument is open to explanation by parol or extrinsic evidence when it is expressed in short and incomplete terms, or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure, or ambiguous, and where the words of the contract must be applied to facts ascertainable only by extrinsic evidence, a resort to such evidence is necessarily permitted."

663 N.W2d 447, 470 (Mich. Sup. Ct. 2003) (quoting *Edoff v. Hecht*, 260 N.W. 93, 96 (1935)).

In *Extrusion Painting, Inc. v. Awnings Unlimited, Inc.* the district court was faced with an

ambiguous term in a sales contract for metal arm extensions for awnings. 37 F.Supp.2d 985 (E.D. Mich. 1999). In that case the defendant intended to order 2,600 feet of upper awning extensions and 2,340 feet of lower awning extensions, but due to a typographical error, the purchase order indicated "each" instead of "feet." *Id.* at 988-89. The plaintiff interpreted the typographical error of "each" to mean "pieces" and shipped 4,940 "pieces" of both upper and lower awning extensions when the plaintiff only wanted 130 "pieces" of upper and lower extensions. *Id.* This resulted in changing the amount owed by the defendant to the plaintiff from around $6,000 to about $179,500. *Id.* The district court addressed the enforcement of the contract and the parol evidence rule:

> The Court finds the term "each" used in the context of the purchase order in the instant case to be ambiguous. Where the terms of a contract are unambiguous, then construction of the contract is a question of law for the Court to decide. However, it is well-settled that where a contract is ambiguous, such as in the present case, and where its meaning must be determined by "extrinsic unconceded facts," construction of the contract is "then a question of fact, or mixed question of law and fact, for the jury."

*Extrusion Painting, Inc.*, 37 F.Supp.2d at 994-95 (citing *S.C. Gray v. Ford Motor Co.*, 286 N.W.2d 34 (1979) and quoting *Hewett Grocery Co. v. Biddle Purchasing Co.*, 286 N.W. 221, 226 (1939)). The court denied the motions for summary judgment and concluded that a jury must resolve the genuine issues of material fact. 37 F.Supp.2d at 997.

In *McGhee v. GMC Truck & Coach Division* the Michigan Court of Appeals addressed a similar situation to the one at hand, except that the parties did not have a handwritten portion of the agreement relating to repairs to be conducted. 296 N.W.2d 286 (Mich. Ct. App. 1980). In that case the plaintiff purchased a used GMC truck tractor from the defendant. *Id.* at 288. When attempting to repair the tractor's transmission, the tractor's cab toppled forward and sustained

substantial damage revealing prior attempts to repair the tractor that had failed.  The plaintiff

alleged that he lost a lucrative hauling contract due to the failure of the tractor.  *Id.*  The plaintiff

brought suit against the defendant for breach of express and implied warranty.  The defendant

responded that the sales order form indicated the tractor was "SOLD (AS IS)" in letters about 1/4

inch tall.  *Id.* The order form also contained language that excluded any express or implied

warranties of merchantability or fitness for a particular purpose.  *Id.* at 288-89.  The court

concluded:

> The documents that embody the agreement in this case meet the statutory
> requirements and therefore operate to preclude liability for breach of any implied
> warranty.  We also observe that the plaintiff's freedom to inspect the tractor,
> including the tilt cab, precludes his recovery under his implied warranty claim.
> The express warranty claim apparently relies on the defendant's salesman's
> statements that the unit was in "good condition".  In the sale of a used machine to
> a knowledgeable buyer, this general expression of opinion cannot be held to create
> any express warranty.

*Id.* at 290.  The court affirmed summary judgment for the defendant.  *Id.* at 292.

In *Berk v. Gordon Johnson Co.* the district court addressed how Michigan law interpreted

inconsistent terms within a single contract.  232 F.Supp. 682 (E.D. Mich. 1964).  In that case the

plaintiff, a poultry processor who butchered poultry according to the laws of the Jewish faith,

contracted with the defendant for some automated poultry processing equipment.  *Id.* at 684.  The

defendant supplied the plaintiff with a drawing that included the written words, "Kosher

operation."  *Id.*  However, the order form included only a limited warranty that the equipment be

free from defects in material and workmanship and excluded all other warranties, concluding that

"No representation or warranty in any form, and regardless of by whom made, that is not

expressed in this purchase Contract, shall be binding on, or enforceable against Gordon Johnson

Company." *Id.* The court denied the defendant's motion for summary judgment, concluding that

the handwritten "Kosher operation" was an express warranty which the typed exclusionary

language did not negate. *Id.* at 688. In analyzing the inconsistent terms in the contract the court

explained:

> general rules for the construction of contracts do not support defendant's position
> that the language of disclaimer must prevail over the language of the drawing. In
> the first place, it is well established that rules of construction are resorted to only
> where the language of the contract is ambiguous and susceptible of different
> meanings. In such case the court must construe the contract to give effect to the
> parties' intention. The contract must be construed as a whole to give effect to all
> its parts, if possible, but without giving disproportionate emphasis to any
> particular part. Separate instruments of the contract will be construed together. In
> the instant case, a basic ambiguity arises in the contract as a result of the
> inconsistency of the language of the disclaimer and the drawing. These
> conflicting clauses must be construed so as to effectuate the intention of the
> parties as gathered from the entire instrument. The clause contributing most
> essentially to the contract is entitled to the most consideration. . . . A further rule
> of construction is that handwriting will prevail over printed language. . . . Also
> general provisions will yield to specific provisions.

*Id.* at 687 (citing *Mansfield Machine Works v. Common Council*, 29 N.W. 105 (1886) and

*Hollerbach v. United States*, 233 U.S. 165, 34 S.Ct. 553 (1941)).

The court concludes that this case bears greater resemblance to *Berk* than to *McGhee*.

Although Mich. Comp. Laws § 440.2316 allows express and implied warranties to be

disclaimed, the Sales Order Form also includes handwritten language indicating that certain

repairs were to be undertaken. The court concludes that the "AS IS" language, written in bold

and in all capital letters, as well as the exclusionary language written in all capital letters is

conspicuous and sufficient to negate express and implied warranties under Mich. Comp. Laws §

440.2316. However, the capitalized exclusion of warranties only excludes warranties that are

"NOT SPECIFICALLY SET FORTH IN THIS DOCUMENT OR DESCRIBED IN

PARAGRAPH 8 OF THE REVERSE SIDE."  Sales Order Form.

The handwritten language written at the top of the Sales Order Form is set forth in the document itself and conflicts with the exclusionary language.  This innate conflict between the exclusion of all warranties and the handwritten language creates an inherent ambiguity.  The court also concludes that the contract is ambiguous because the parties cannot even agree on what the handwritten language says or means.  The relevant handwritten portion states: "subject to repairs being completed including all lights working, fire suppression & A/C working.  Replace bad hoses, replace pins & bushings on roller arms, repack main lift ___."  Plaintiff believes the last word states "etc." and defendant argues that it states, "cyc."  Because the court concludes that the meaning of the contract is ambiguous, it finds that parol evidence may be used to explain the parties' intention in the terms of the contract.

Once parol evidence is used to determine the parties' intention the court must construe the disputed facts in the light most favorable to the Plaintiffs on summary judgment.  Plaintiffs assert that the use of the word "including" made the list of specific repairs following the term not comprehensive, but rather merely exemplary.  Further, the language "subject to repairs being completed" indicates the parties did indeed discuss a series of repairs to be conducted.  Defendant's version of the events is that the handwritten contract outlined all of the specific repairs to be conducted.  However, because the contract is ambiguous and this court must accept Plaintiffs' version of the events as true, the court cannot grant summary judgment on this claim.  *See Extrusion Painting, Inc.*, 37 F.Supp.2d at 994-95.  Although Mr. Newman cannot avoid the contract's terms by his failure to read it, *see Snyder v. Wolverine Mut. Motor Ins. Co.*, 204 N.W. 706 (Mich. Sup. Ct. 1925), the rules of contract interpretation indicate that typewritten form

exclusions do not negate handwritten terms where there is a conflict. *See Berk*, 232 F.Supp. at

687. There is an interpretation of the handwritten language that favors Plaintiffs. The term

"subject to repairs being completed," contemplates a series of repairs. Further, the term

"including" does not clearly indicate that the list of specific repairs is comprehensive. Finally,

the parties do not agree on what the final handwritten word is, with Plaintiffs' version of "etc."

indicating that the parties contemplated additional repairs. For these reasons Defendant's motion

for summary judgment regarding Plaintiffs' breach of contract claim must be **DENIED**.

### B.      Unconscionability Claim

Mich. Comp. Laws § 440.2302 states that

> (1) If the court as a matter of law finds the contract or any clause of the contract to
> have been unconscionable at the time it was made the court may refuse to enforce
> the contract, or it may enforce the remainder of the contract without the
> unconscionable clause, or it may so limit the application of any unconscionable
> clause as to avoid any unconscionable result.

> (2) When it is claimed or appears to the court that the contract or any clause thereof may
> be unconscionable the parties shall be afforded a reasonable opportunity to present
> evidence as to its commercial setting, purpose and effect to aid the court in making the
> determination.

Mich. Comp. Laws § 440.2302(1)-(2). Under Michigan law a court may invalidate a contract

that is determined to be unconscionable. Courts may even invalidate commercial contracts due

to unconscionability. *See e.g., Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D. Mich. 1976).

As the Sixth Circuit has explained:

> To determine whether a provision is an unenforceable contract of adhesion,
> Michigan applies a two-prong test of "procedural" and "substantive"
> unconscionability. The test inquires: "'(1) What is the relative bargaining power
> of the parties, their relative economic strength, the alternative sources of supply,
> in a word, what are their options?; [and] (2) Is the challenged term substantively

> reasonable?'" The party seeking to invalidate the provision must show both types
> of unconscionability . . . .

*Andersons, Inc.*, 166 F.3d at 322-23 (quoting *Rehmann, Robson & Co. v. McMahan*, 466 N.W.2d

325, 329 (Mich. Ct. App. 1991) and *Allen v. Michigan Bell Telephone Co.*, 171 N.W.2d 689, 692

(Mich. Ct. App. 1969)). Unconscionability is a question of law for a court to determine.

*Andersons, Inc.*, 166 F.3d at 323 (relying on *Northwest Acceptance Corp. v. Almont Gravel, Inc.*,

412 N.W.2d 719, 722 (Mich. Ct. App. 1987)).

Defendant asserts that although a court may refuse to enforce an unconscionable contract,

Mich. Comp. Laws § 440.2302(1)-(2) does not provide for an affirmative cause of action. The

parties have not located any Michigan cases addressing this issue, but it appears that several other

state and federal courts have addressed the issue as it pertains to the similar U.C.C. § 2-302

provision pertaining to unconscionability.

For example, in *Vom Lehn v. Astor Art Galleries, Ltd.*, a New York court addressed

whether there is a right to a claim for damages due to an unconscionable contract. 380 N.Y.S.2d

532, 541 (N.Y. Sup. 1976). It determined that the provision in the U.C.C. relating to

unconscionability, U.C.C. § 2-302, "merely gives the court the right of refusal to enforce an

unconscionable contract. It makes no provision for damages, and none may be recovered

thereunder." *Id.* Similarly, the Supreme Court of South Dakota determined that plaintiffs "have

no right to recover damages simply because they *entered into* an unconscionable contract."

*Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. Sup. Ct. 2007)

(relying on *Cowin Equip. Co., Inc. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir.

1984)). In *Nygaard* the South Dakota Supreme Court affirmed the dismissal of the plaintiff's

adhesion contract claims that were being used as a sword to recover damages, as well as

dismissal of any defensive claims because there were no pleadings indicating that the defendants

were suing for enforcement of the contracts.  731 N.W.2d at 196.

In *Cowin Equip. Co.* the Eleventh Circuit noted that:

> The equitable theory of unconscionability has never been utilized to allow for the
> affirmative recovery of money damages.  The Court finds that neither the common
> law of Florida, nor that of any other state, empowers a court addressing
> allegations of unconscionability to do more than refuse *enforcement* of the
> unconscionable section or sections of the contract so as to avoid an
> unconscionable result.

734 F.2d at 1582 (quoting *Bennett v. Behring Corp.*, 466 F.Supp. 689, 700 (S.D. Fla. 1979)).  *See*

*also, Galvin v. First Nat. Monetary Corp.*, 624 F.Supp. 154, 158 (E.D.N.Y. 1985) (noting that

"the doctrine of unconscionability is in the nature of an affirmative defense, and does not give

rise to a cause of action"); *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 39 (Neb. Sup. Ct. 2004)

(noting that "[t]he doctrine of unconscionability set forth in § 2-302 is not a basis for the award

of money damages.  As certain courts have noted, this provision of the Uniform Commercial

Code was not intended to create a cause of action and cannot be used as a basis for damages");

*Best v. U.S. Nat. Bank of Oregon*, 714 P.2d 1049, 1056 (Or. Ct. App. 1986) (holding that

"[b]ecause the doctrine of unconscionability is not a basis for affirmative relief, the trial court

was correct in granting the bank's motion for summary judgment against the unconscionability

claim").

A plain reading of Mich. Comp. Laws § 440.2302(1)-(2) indicates that it is to be used for

protection against enforcement and not as an affirmative action for damages.  Further, it appears

that many state and federal courts around the country have concluded that the tandem U.C.C.

unconscionability provision is likewise to be used as a shield and not as a sword. Thus, because

the Plaintiffs have failed to direct this court's attention to a Michigan court approving of the use

of Mich. Comp. Laws § 440.2302 to support an affirmative cause of action, this claim must be

**DISMISSED**. It also does not appear from the pleadings that Defendant is seeking enforcement

of the contract, thus there is no reason for the court to examine the use of Mich. Comp. Laws §

440.2302 as a defense to such action for enforcement. Defendant's motion for summary

judgment on this issue will be **GRANTED**.

    **IV.**    **Conclusion**

    As discussed *supra*, the court concludes that Defendant's motion for summary judgment

regarding Plaintiffs' breach of contract claim will be **DENIED**. Defendant's motion for

summary judgment regarding the Plaintiffs' unconscionability claim will be **GRANTED**.

    A separate order will enter.

Dated: 10/8/09


                _____*/s/ R. Allan Edgar*_____
                      R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE